FILED

06 SEP 21 PM 3: 04

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANAL NAOOM dba L.T.M. AUTO SALES; et al.,<br><br>Plaintiff,<br><br>vs.<br><br>SECURED ASSETS INCOME FUNDS, an unknown entity; et al.,<br><br>Defendants. | CASE NO. 05-CV-1207 H (CAB)<br><br>**ORDER DENYING COUNTERDEFENDANTS' APPLICATIONS FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION** |
| SAIF, INC., a California corporation, et al.,<br><br>Counter-Claimant,<br><br>vs.<br><br>MANAL NAOOM dba L.T.M. AUTO SALES; et al.,<br><br>Counter-Defendants. | |

On August 4, 2006, the Court received an application from Counterclaimant SAIF, Inc. for an Order facilitating the sale of collateral pursuant to California Commercial Code §§ 9609 and 9610. (Doc. No. 50.) Counterdefendants Manal Naoom, Javad Mousavinia, Parviz Ghadimi, Afshin Kashani, Mehran Khomamizadeha,

1  and Mohammed Kashan (collectively "Counterdefendants") submitted an opposition
2  on August 11, 2006. (Doc. No. 55.) In their opposition, Counterdefendants include
3  a request for a temporary restraining order ("TRO") or a preliminary injunction against
4  Counterclaimant.   On August 14, 2006, Counterdefendants submitted another
5  application for a TRO or preliminary injunction. (Doc. No. 65.) In both applications,
6  Counterdefendants seek to restrain Counterclaimant from collecting and selling the
7  inventory currently held by the Counterdefendants.

8      The Court held a hearing on Counterclaimant's request and Counterdefendants'
9  applications for injunctive relief on August 15, 2006. Richard P. Miller appeared for
10 Counterdefendants and Richard S. Van Dyke appeared for Counterclaimant. Following
11 the hearing, the Court entered an order on August 16, 2006 continuing both
12 Counterclaimant's request for an order facilitating sale and Counterdefendants'
13 requests for injunctive relief.   Additionally, the Court allowed the parties to file
14 supplemental briefs. On August 25, 2006, Counterdefendants submitted a request for
15 a TRO in response to Counterclaimant's alleged repossession of several cars. (Doc.
16 No. 79.) In this latest request, Counterdefendants again ask the Court to restrain the
17 Counterclaimant from collecting and disposing of vehicles held by various
18 Counterdefendants. Counterclaimant filed a response to the request for the TRO on
19 August 28, 2006.  (Doc. No. 80.)  On September 13, 2006, the Court received
20 supplemental memoranda from both Counterdefendants (Doc. No. 91) and
21 Counterclaimant (Doc. No. 93).  On September 18, 2006, the Court received
22 Counterdefendants' lodgments and Counterclaimant's supplemental reply in support
23 of their positions. Finally, the Court held a second hearing on September 20, 2006.
24 Richard P. Miller appeared for Counterdefendants and Richard S. Van Dyke appeared
25 for Counterclaimant.   For the reasons that follow, the Court DENIES
26 Counterdefendants' requests for a TRO or preliminary injunction.
27 / / / /
28 / / / /

## **Background**

On June 28, 1999, Counterdefendant Javad Mousavinia, d/b/a Cars-R-Us, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $110,000, secured by the Security and Buy-Back agreement.[1]  (Third Amended Complaint ("TAC"), Ex. 13.) According to Thomas A. Sterling, Senior Vice President of SAIF, Inc., Cars-R-Us defaulted under the agreement in the amount of $211,144.51. (Counterclaimant's App., Declaration of Thomas A. Sterling ("Sterling Decl.") at ¶ 26.)

On April 11, 2000, Counterdefendant Manal Naoom, d/b/a LTM Auto Sales, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $65,300, secured by the Security and Buy-Back agreement. (TAC, Ex. 4.) SAIF, Inc. filed a UCC-1 with the California Secretary of State on December 23, 2004. (Counterclaimant's App., Ex. A.)  According to Sterling, LTM defaulted under the agreements in the amount of $207,398.  (Id., Sterling Decl. at ¶ 6.)

On October 20, 2000, Counterdefendant Parviz Ghadimi, d/b/a MP Motors, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $49,180, secured by the Security and Buy-Back agreement.  (TAC, Ex. 7.)  Secured Asset Income Funds filed a UCC-1 with the California Secretary of State on December 4, 2000, and SAIF, Inc. filed another UCC-1 on March 7, 2005. (Sterling Decl. at ¶ 14; Counterclaimant's App., Exs. C-1, C-2.) According to Sterling, MP Motors defaulted under the agreements in the amount of $320,260.58.  (Sterling Decl. at ¶ 16.)

On October 23, 2001, Counterdefendant Afshin Kashani, d/b/a Auto Finance

---

[1] Defendant Secured Assets Income Funds, Inc., a Nevada corporation, filed for voluntary Chapter 7 bankruptcy in United States Bankruptcy Court for the Southern District of California on March 10, 2006, Case No. 06-00439-PB7.  The bankruptcy court dismissed that case, and the case was closed on August 24, 2006.  Similarly, Defendant Secured Assets, Inc., a Nevada corporation, filed for bankruptcy on March 10, 2006, Case No. 06-00438-PB7.  The bankruptcy court dismissed that case, and the case was closed on August 24, 2006.

1  Group, entered into a Security and Buy-Back agreement with Secured Assets of
2  California under contract to Secured Assets Income Funds, in which a promissory note
3  issued for $30,000, secured by the Security and Buy-Back agreement. (TAC, Ex. 1.)
4  Counterdefendant Kashani signed a UCC-1. (Counterclaimant's App., Ex. B.)
5  According to Sterling, Auto Finance Group defaulted under the agreement in the
6  amount of $239,972. (Sterling Decl. at ¶ 11.)

7         On March 22, 2003, Counterdefendant Mehran Khomamizadeha, d/b/a Car
8  Mart, entered into a Security and Buy-Back agreement with Secured Assets of
9  California under contract to Secured Assets Income Funds, in which a promissory note
10 issued for $120,000, secured by the Security and Buy-Back agreement. (TAC, Ex. 10.)
11 Secured Assets of California filed a UCC-1 with the California Secretary of State on
12 December 4, 2000. (Counterclaimant's App., Ex. D.) According to Sterling, Car Mart
13 defaulted under the agreement in the amount of $372,050.50. (Sterling Decl. at ¶ 21.)

14        On September 22, 2003, Counterdefendant Mohammed Kashan, d/b/a Team
15 Auto, entered into a Security and Buy-Back agreement with Secured Assets of
16 California under contract to Secured Assets Income Funds, in which a promissory note
17 issued for $50,000, secured by the Security and Buy-Back agreement.
18 (Counterclaimant's App., Ex. E.) SAIF, Inc. filed a UCC-1 with the California
19 Secretary of State on March 7, 2005. (Id., Ex. F.) According to Sterling, Team Auto
20 defaulted under the agreement in the amount of $51,518.77. (Sterling Decl. at ¶ 31.)

21        According to the declaration of Richard P. Miller, counsel for
22 Counterdefendants, Secured Assets, Inc. incorporated in Nevada on September 22,
23 1993. (Pls.' Opp., Declaration of Richard P. Miller ("Miller Decl.") at ¶ 4.) Miller also
24 contends that on October 8, 1996, Sterling and Rita Mills McCoy filed a Fictitious
25 Business Name Statement for Secured Assets of California, their newly formed
26 unincorporated partnership. (Id. at ¶ 5.) According to Miller, on July 16, 1998,
27 Secured Assets Income Funds, Inc. incorporated in Nevada. (Id. at ¶ 6.) Miller states
28 in his declaration that Secured Assets of California ceased to have lawful authority to

1   act on October 8, 2001, as its Fictitious Business Name Statement filed five years

2   earlier expired without renewal. (Id. at ¶ 11.) Counterclaimant SAIF, Inc., a California

3   corporation, filed its articles of incorporation with the California Secretary of State on

4   April 8, 2002. (Not. Lodgment Opp. Counterclaimant's App., Ex. B.) Miller claims

5   that on July 29, 2004, Sterling and McCoy filed and recorded Statements of

6   Abandonment for the fictitious business name of Secured Assets of California. (Miller

7   Decl. at ¶ 20.) According to Miller, SAIF, Inc. did not possess a California Finance

8   Lender's license until August 3, 2004. (Id. at ¶ 23.)

9   **Discussion**

10   **1.**     **Legal Standard for Temporary Restraining Order/Preliminary Injunction**

11         The same standard governs the issuance of both TROs and preliminary

12   injunctions. See, e.g., Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,

13   181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary

14   injunction is the same as the standard for issuing a temporary restraining order ."). A

15   plaintiff can demonstrate it is entitled to preliminary relief in one of two ways. First,

16   using the "traditional criteria," a plaintiff must demonstrate: "(1) a strong likelihood

17   of success on the merits, (2) the possibility of irreparable injury to plaintiff if

18   preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and

19   (4) advancement of the public interest (in certain cases)." Earth Island Inst. v. U.S.

20   Forest Serv., 442 F.3d 1147, 1158 (9th Cir. 2006). Alternatively, a plaintiff may show

21   "*either* a combination of probable success on the merits and the possibility of

22   irreparable harm or that serious questions are raised and the balance of hardships tips

23   sharply in his favor." Id. (emphasis in original). In short, these two alternatives

24   "represent two points on a sliding scale in which the required degree of irreparable

25   harm increases as the probability of success decreases." LGS Architects, Inc. v.

26   Concordia Homes of Nev., 434 F.3d 1150, 1155 (9th Cir. 2006).

27   / / / /

28   / / / /

- 5 -

2.    **Analysis**

Counterdefendants seek injunctive relief to prevent Counterclaimant from proceeding with the sale of collateral pursuant to California Commercial Code §§ 9609 and 9610.  Section 9609 states, in pertinent part:

> (a) After default, a secured party may do both of the following:
> (1) Take possession of the collateral.
> (2) Without removal, render equipment unusable and dispose of collateral on a debtor's premises under Section 9610.
>
> (b) A secured party may proceed under subdivision (a) in either of the following ways:
> (1) Pursuant to judicial process.
> (2) Without judicial process, if it proceeds without a breach of the peace.

Cal. Comm. Code § 9609.  Section 9610 provides, in part:

> (a) After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
>
> (b) Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable.

Cal. Comm. Code § 9610.  Under the California Commercial Code § 9102(a)(72), a "secured party" is "[a] person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding."  Cal. Comm. Code § 9102(a)(72).

A.    **Probable Success on the Merits**

Counterdefendants have failed to make a sufficient showing of probability of success on the merits to warrant injunctive relief.  In their opposition and applications for injunctive relief, Counterdefendants primarily argue that SAIF, Inc. is not a secured party in interest.  First, Counterdefendants assert that SAIF, Inc. is not a secured party because the contracts signed by them all prohibited assignment and terminated all remaining rights and duties upon assignment without written consent.  According to Counterdefendants, § 8.5 of the contracts, the assignment provision, precludes either party from assigning rights under the agreement without the express written consent of the opposing party.  Section 8.5 states: "Neither party shall assign the duties or

obligations of this Agreement without the express written consent of the other party." (TAC, Ex. 1 ("Agreement") at § 8.5.) As this Court noted in its August 16, 2006 order, however, by its plain language this clause only addresses the assignment of duties and obligations, not the assignment of rights. This interpretation is confirmed by § 6.0 of the Agreement, which states that the terms of the Agreement "shall inure to the benefit of SAC, its successors and assigns, and any other holder who derives from SAC title to or any interest in any of the liabilities." (Id. at § 6.0.) Moreover, even assuming that the assignment of rights led to the termination of the Agreement, § 7.1.2 indicates that the duties and obligations of the borrowers would remain. (See id. at § 7.1.2, stating that "[t]ermination of this Agreement for any reason shall not relieve Borrower of any obligations under this Agreement which are to be performed after termination, including, but not limited to, payment and collection terms contained herein."). Accordingly, rights under the contracts were assignable, and an assignment alone would not preclude SAIF, Inc.'s status as a secured party.

Second, Counterdefendants argue that Secured Assets of California was not in existence when it transferred its rights under the contracts because its fictitious business name statement had expired. As a result, Counterdefendants claim that Secured Assets of California could not transfer any rights to SAIF, Inc., and thus, SAIF, Inc. is not a secured party. Expiration of a fictitious business name statement, however, only limits the ability of the business to bring suit on a contract or transaction until the certificate is filed, but does not preclude the entity from conducting business. See Cal. Bus. & Prof. Code § 17918 ("No person transacting business under a fictitious business name . . . or his assignee, may maintain any action upon or on account of any contract made, or transaction had, in the fictitious business name . . . until the fictitious business name statement has been executed, filed, and published."). Failure to file results in an abatement of suit until filing is completed. See, e.g., Kadota Fig Ass'n of Producers v. Case-Swayne Co., 167 P.2d 518 (Cal. Ct. App. 1946). Thus, the mere fact

/ / / /

1    that Secured Assets of California's statement had expired does not negate its existence

2    or extinguish the loan obligation.

3          Third, Counterdefendants argue that SAIF, Inc. has not provided any

4    documentation of its claim that it is a successor in interest of Secured Assets, Inc. and

5    Secured Assets Income Funds, Inc.  According to the declaration of Thomas Sterling,

6    senior vice president of SAIF, Inc. and former principal of Secured Assets of

7    California, however, SAIF, Inc. is the successor of Secured Assets of California.

8    (Sterling Decl. at ¶¶ 2, 5, 10, 15, 20, 25, & 30.)  Further, Counterclaimant claims that

9    Secured Assets of California and SAIF, Inc. engaged in a de facto merger with SAIF,

10   Inc. as the survivor.  Courts look to five factors in determining whether an asset

11   transfer results in a de facto merger:  (1) whether the consideration paid for the assets

12   was solely stock of the purchaser or a parent company; (2) whether the purchaser

13   continued the same business after the sale; (3) whether the shareholders of the seller

14   become shareholders of the purchaser; (4) whether the seller liquidated; and (5)

15   whether the buyer assumed the liabilities necessary to carry on the business of the

16   seller.  Marks v. Minnesota Mining & Mfg. Co., 232 Cal. Rptr. 594, 598 (Cal. Ct. App.

17   1986).  In support, Sterling states that SAIF, Inc. has carried on the business formerly

18   conducted by Secured Assets of California, the sole consideration  in the merger was

19   stock, the partners of Secured Assets of California became the shareholders of SAIF,

20   Inc., and SAIF, Inc. took on all liabilities.  (Declaration of Thomas Sterling in Support

21   of Defendants' Motion for Summary Judgment at ¶¶ 28-31, 34.)  Thus, SAIF, Inc.

22   claims that it is the successor to Secured Assets of California.

23         Here, the parties do not dispute that Counterdefendants all signed promissory

24   notes and that they received loans.  Similarly, the parties do not dispute that the

25   Counterdefendants continue to owe money on the notes.  Further, as a general matter,

26   principals may elect to change the form of a company, and more specifically, partners

27   may decide to change the structure of their business and incorporate a partnership. See,

28   e.g., Cavasso v. Downey, 188 P. 594, 596 (Cal. Ct. App. 1920) (finding that partnership

1   merged into corporation under certain circumstances). Thus, Counterdefendants have
2   failed to show a sufficient likelihood of success on the merits of their claim that
3   Counterclaimant SAIF, Inc. is not a successor to Secured Assets of California.
4   Nevertheless, as indicated in the order denying Counterclaimant's application for an
5   order facilitating the private disposition of collateral, the present record is insufficient
6   for the Court to determine whether Secured Assets of California and SAIF, Inc.
7   engaged in a de facto merger. The Court will revisit whether a de facto merger
8   occurred in ruling on the parties' motions for summary judgment.

9       Finally, Counterdefendants request that the Court take judicial notice of several
10  findings regarding agreements similar to those at issue in this case made by the state
11  trial court in Clark County, Nevada in Wexler v. Polich, Case No. A452753. The Court
12  takes judicial notice of the proceedings.

13  **B.    Possibility of Irreparable Injury**

14      Even assuming Counterdefendants could show a likelihood of success on the
15  merits, Counterdefendants have not shown a sufficient possibility of irreparable injury
16  to warrant injunctive relief. "The possibility that adequate compensatory or other
17  corrective relief will be available at a later date, in the ordinary course of litigation,
18  weighs heavily against a claim of irreparable harm." Los Angeles Memorial Coliseum
19  Commission v. National Football League, 634 F.2d 1197, 1202 (9th Cir. 1980)
20  (internal citations omitted). Irreparable injuries are those which cannot be adequately
21  compensated by money damages. Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86,
22  91 (3rd Cir. 1992).

23      In their papers and in the hearings on the applications, Counterdefendants have
24  failed to demonstrate why money damages are inadequate and why corrective relief
25  will not be available at a later date. See Los Angeles Memorial Coliseum, 634 F.2d at
26  1202. Moreover, the Court notes that the denial of Counterdefendants' application for
27  a temporary restraining order does not terminate their ability to pursue their claims and
28  to seek monetary damages or permanent injunctive relief in this matter. See id.

1 | Accordingly, the Court concludes that Counterdefendants have failed to show

2 | sufficiently the possibility of irreparable harm should the Court decline to grant

3 | injunctive relief.

4 | ### Conclusion

5 | For the reasons stated above, the Court **DENIES** Counterdefendants' requests

6 | for a TRO or preliminary injunction.

7 | IT IS SO ORDERED.

8 | Dated: ___9/21/06___

9 |

10 |

                                MARILYN L. HUFF, District Judge

11 |                                 UNITED STATES DISTRICT COURT

12 |

13 | COPIES TO:

14 | Richard S. Van Dyke, Esq.
Van Dyke & Associates

15 | Faraday Business Park
5741 Palmer Way, Suite B

16 | Carlsbad, CA 92008

17 | Richard P. Miller, Esq.
Law Offices of Richard P. Miller

18 | 2207 Garnet Avenue, Suite N
San Diego, CA 92109

19 |

20 |

- 10 -