1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MANAL NAOOM dba L.T.M. AUTO          CASE NO. 05-CV-1207 H
     SALES; et al.,                       (CAB)

12
                              Plaintiffs,  **ORDER:**
13                                         **(1) GRANTING IN PART**
                                           **AND DENYING IN PART**
14        vs.                              **PLAINTIFFS' MOTION FOR**
                                           **SUMMARY JUDGMENT**
15                                         **(2) GRANTING IN PART**
                                           **AND DENYING IN PART**
16                                         **DEFENDANTS' MOTION**
                                           **FOR SUMMARY**
17   SECURED ASSETS INCOME                 **JUDGMENT**
     FUNDS, an unknown entity; et al.,     **(3) GRANTING IN PART**
18                                         **AND DENYING IN PART**
                              Defendants.  **SAIF, INC.'S MOTION FOR**
19                                         **SUMMARY JUDGMENT**

20   ─────────────────────────────

21   SAIF, INC., a California corporation,
     et al.,

22
                         Counter-Claimant,
23
          vs.
24
     MANAL NAOOM dba L.T.M. AUTO
25   SALES; et al.,

26                       Counter-Defendants.

27        Plaintiffs Javad Mousavinia (d/b/a Cars-R-Us), Manal Naoom (d/b/a LTM Auto

28   Sales), Parviz Ghadimi (d/b/a MP Motors), Afshin Kashani (d/b/a Auto Finance Group),

Mehran Khomamizadeha (d/b/a Car Mart), and Mohammed Kashan (d/b/a Team Auto) (collectively, "Plaintiffs") originally filed their complaint in state court on June 30, 2004. Defendants removed the action to this Court on June 7, 2005. (Doc. No. 1.)

Plaintiffs filed a motion for summary judgment on September 7, 2006. (Doc. No. 86.) Defendants SAIF, Inc., Secured Assets of California, Thomas A. Sterling, and Carole Sterling (collectively, "Defendants") filed their opposition on September 18, 2006, (Doc. No. 100), and Plaintiffs submitted a reply on September 25, 2006. (Doc. No. 126.) Plaintiffs submitted a second reply on October 6, 2006. (Doc. No. 144.)

On September 1, 2006, Defendants SAIF, Inc., Secured Assets of California, Thomas A. Sterling, and Carole Sterling (collectively, "Defendants") filed a motion for summary judgment on several of Plaintiffs' claims, and Defendant/Counterclaimant SAIF, Inc. filed a motion for summary judgment on several of its counterclaims. (Doc. No. 87.) Plaintiffs filed their opposition on September 18, 2006, (Doc. No. 105), and Defendants filed a reply on September 25, 2006. (Doc. No. 124.)

The Court held a hearing on the motions for summary judgment on October 16, 2006. Richard Miller appeared for Plaintiffs, and Richard Van Dyke appeared for Defendants.

For the reasons provided below, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Summary Judgment. (Doc. No. 86.) The Court GRANTS in part and DENIES in part Defendants' motion for summary judgment on Plaintiffs' claims. (Doc. No. 87.) The Court GRANTS in part and DENIES in part SAIF, Inc.'s motion for summary judgment on its breach of contract counterclaims. (Doc. No. 87.)

### Background

Plaintiffs were all engaged in the business of used car sales, and they all sought financing to purchase inventory. (Third Amended Complaint ("TAC") ¶¶ 2-80.) As a result, they all signed agreements to obtain financing. (See id., Exs. 1-16.) The present dispute arises out of these agreements and the parties' related actions.

/ / / /

On June 28, 1999, Plaintiff Javad Mousavinia, d/b/a Cars-R-Us, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $110,000, secured by the Security and Buy-Back agreement.[1]  (Id., Ex. 13.)

On April 11, 2000, Plaintiff Manal Naoom, d/b/a LTM Auto Sales, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $65,300, secured by the Security and Buy-Back agreement.  (Id., Ex. 4.)  Defendant SAIF, Inc. filed a UCC-1 with the California Secretary of State on December 23, 2004. (Counterclaimant's App. for an Order Facilitating Private Disposition of Collateral ("Counterclaimant's App."), Ex. A.)

On October 20, 2000, Plaintiff Parviz Ghadimi, d/b/a MP Motors, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $49,180, secured by the Security and Buy-Back agreement.  (TAC, Ex. 7.)  Defendant Secured Asset Income Funds filed a UCC-1 with the California Secretary of State on December 4, 2000, and SAIF, Inc. filed another UCC-1 on March 7, 2005.  (Counterclaimant's App., Exs. C-1, C-2.)

On October 23, 2001, Plaintiff Afshin Kashani, d/b/a Auto Finance Group, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $30,000, secured by the Security and Buy-Back agreement.  (TAC, Ex. 1.)  Plaintiff Kashani signed a UCC-1.  (Counterclaimant's App., Ex. B.)

/ / / /

---

[1] Defendant Secured Assets Income Funds, Inc., a Nevada corporation, filed for voluntary Chapter 7 bankruptcy in United States Bankruptcy Court for the Southern District of California on March 10, 2006, Case No. 06-00439-PB7.  The bankruptcy court dismissed that case, and the case was closed on August 24, 2006.  Similarly, Defendant Secured Assets, Inc., a Nevada corporation, filed for bankruptcy on March 10, 2006, Case No. 06-00438-PB7.  The bankruptcy court dismissed that case, and the case was closed on August 24, 2006.

05cv1207

On March 22, 2003, Plaintiff Mehran Khomamizadeha, d/b/a Car Mart, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $120,000, secured by the Security and Buy-Back agreement.   (TAC, Ex. 10.) Defendant Secured Assets of California filed a UCC-1 with the California Secretary of State on December 4, 2000.  (Counterclaimant's App., Ex. D.)

On September 22, 2003, Plaintiff Mohammed Kashan, d/b/a Team Auto, entered into a Security and Buy-Back agreement with Secured Assets of California under contract to Secured Assets Income Funds, in which a promissory note issued for $50,000, secured by the Security and Buy-Back agreement. (Counterclaimant's App., Ex. E.)  SAIF, Inc. filed a UCC-1 with the California Secretary of State on March 7, 2005.  (Id., Ex. F.)

According to Defendant Thomas Sterling, he was a principal in Defendant Secured Assets of California and is Senior Vice President of Defendant SAIF, Inc. (Decl. of Thomas Sterling in Support of Defendants'/Counterclaimant's Motion for Summary Judgment ("8/31 Sterling Decl.") ¶¶ 2, 28.)  He states that SAIF, Inc. was incorporated on April 8, 2002, and Secured Assets of California ceased operations on the same day.  (Id. ¶ 28.)  Further, he states that after April 8, 2002, SAIF, Inc. took over the business of Secured Assets of California.  (Id. ¶ 29.)  SAIF, Inc. obtained a California Finance Lender's license on September 5, 2002.  (Id. ¶ 33.)  The license was administratively revoked for failure to file a required document on May 13, 2003, and SAIF, Inc. obtained a new license on August 4, 2004.  (Id.)

The parties do not dispute that Plaintiffs all signed the underlying agreements and that they received loans.  Similarly, the parties do not dispute that Plaintiffs continue to owe money under the agreements.  See, e.g., Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment.  In their complaint, Plaintiffs bring several claims seeking to void the transactions, as well as claims seeking other relief. Plaintiffs' complaint contains the following counts: (1) declaratory relief regarding the

rights and liabilities of the parties; (2) an accounting of the amounts owed; (3) a refund or offset of usurious payments; (4) breach of contract; (5) fraud; (6) unfair business practices; (7) intentional interference with prospective economic advantage; (8) preliminary and permanent injunctions; (9) Racketeer Influenced and Corrupt Organizations Act ("RICO"); (10) slander; (11) conversion; (12) action against the notary of the agreements and the notary bond company; and (13) declaratory relief regarding an allegedly usurious mortgage loan to Plaintiff Kashimi.

Defendant SAIF, Inc. filed a first amended countercomplaint in which it brings breach of contract claims based on alleged breaches of the security and buy back agreements and breaches of personal guarantee agreements. (Doc. No. 38.) SAIF, Inc. brings breach of contract claims against Plaintiffs Manal Naoom, Afshin Kashani, Parvis Ghadimi, Mehran Khomamizadeha, and Javad Mousavinia, as well as against Nashat Naoom, who signed a personal guarantee of payment in connection with Plaintiff Manal Naoom's buy back agreement. SAIF, Inc. also brings claims for breach of fiduciary duty, conspiracy, and conversion against the same individuals.

## Summary Judgment Standard

Under Fed. R. Civ. P. 56, a court may grant summary judgment in favor of a party upon a claim "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact on issues where the non-moving party will bear the burden at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The mere existence of a scintilla of

evidence in support of the non-moving party's position is not sufficient." <u>Anderson</u>, 477 U.S. at 252.  Thus, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." <u>Id.</u> at 256.  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law.  <u>Celotex</u>, 477 U.S. at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal citation omitted).

When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970) (citation omitted); <u>Fontana v. Haskin</u>, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  <u>Anderson</u>, 477 U.S. at 255.

### **Analysis**

#### A.  **Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment on several grounds.  First, Plaintiffs assert that the that the security and buy back agreements are void as a matter of law because they are usurious.  Second, Plaintiffs assert that the agreements are void because they are unconscionable.  Third, Plaintiffs argue that, if the Court finds that the agreements are not void, they are nevertheless entitled to summary judgment on their claim for offset, credit, or refund of usurious payments.  Fourth, the Plaintiffs ask the Court to grant summary judgment on their claim for an accounting.  Fifth, the Plaintiffs assert that the agreements are void because Defendant SAIF, Inc. committed a material breach of the contracts.  Sixth, Plaintiffs argue that Defendant SAIF, Inc. is not the real party in interest and lacks standing to enforce the agreements.

1      **1.  Usury**

2          California's law regarding excessive interest rates is set forth in the Usury Law,

3    an uncodified ballot initiative first adopted in 1918.  <u>See</u> West's Annotated Civ. Code

4    §§ 1916-1 et seq.; <u>see also</u> <u>Fox v. Peck Iron and Metal Co.</u>, 25 B.R. 674, 690-91 (Bankr.

5    S.D. Cal. 1982).  The Usury Law provides for forfeiture of usurious interest and also

6    provides for the civil recovery of treble interest payments under certain circumstances.

7    <u>Id.</u> §§ 1916-2, 1916-3.  The maximum legal interest rate is now set forth in Article XV

8    of the California Constitution, which provides that parties may contract for a rate of

9    interest up to the greater of ten percent per year or five percent per year over the

10   discount rate of the Federal Reserve Bank of San Francisco.  Cal. Const. Art. XV, § 1.

11   Some lenders are exempt from the Usury Law, including, as the parties agree here,

12   licensed commercial finance lenders.  <u>See</u> Cal. Fin. Code § 22002.

13         Usury contains four elements: "(1) The transaction must be a loan or forbearance;

14   (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest

15   must be absolutely repayable by the borrower; and (4) the lender must have a willful

16   intent to enter into a usurious transaction."  <u>Ghirardo v. Antonioli</u>, 8 Cal. 4th 791, 798

17   (Cal. 1994).  Regarding the intent element, the "'conscious and voluntary taking of

18   more than the legal rate of interest constitutes usury and the only intent necessary on

19   the part of the lender is to take the amount of interest he receives; if that amount is more

20   than the law allows, the offense is complete.'"  <u>Id.</u> (quoting <u>Thomas v. Hunt Mfg. Co.</u>,

21   269 P.2d 12, 16 (Cal.1954)).

22         An agreement containing a usurious interest rate only renders the interest

23   provisions of a note void.  <u>Epstein v. Frank</u>, 177 Cal. Rptr. 831, 837 (Cal. Ct. App.

24   1981).  Voiding of the interest provisions, however, "do[es] not affect the right of the

25   payee to recover the principal amount of the note when due.  The inclusion of a

26   usurious interest provision, therefore, results, in effect, in a note payable at maturity

27   without interest."  <u>Id.</u>

28   / / / /

The question of whether a transaction is usurious is a mixed question of law and fact.  See Ghirardo, 8 Cal. 4th at 800 ("Once the historical facts of the transaction are determined, the question of whether *that type of transaction* is subject to the usury proscription is a question of law." (emphasis in original)).  Nevertheless, a court may "decide the issue as a matter of law where the court can easily determine whether a certain interest charge does or does not exceed the lawful rate." Domarad, 76 Cal. Rptr. at 540.  Where a transaction is not usurious on its face, courts may look at the substance of the transaction to determine if the interest charges are legal.  Mission Hills Dev. Corp. v. Western Small Bus. Inv. Co., 67 Cal. Rptr. 505, 506 (Cal. Ct. App. 1968)  "The courts will not permit an evasion of the usury law by a subterfuge, and it is always permissible to show that a transaction ostensibly lawful is in fact a usurious loan." Id.

"The word 'interest' as used in the usury law includes any bonus, commission, or any other form of compensation paid to the lender for the use of the money borrowed, but it does not include expense items for investigating, appraising, inspecting and otherwise servicing the loan." Cambridge Dev. Co. v. U. S. Financial, 90 Cal. Rptr. 333, 335 (Cal. Ct. App. 1970).  Thus, a lender may charge extra and reasonable amounts for incidental services, expenses, or risks in addition to lawful interest, but the fees must not be for the loan of money.  See e.g., Klett v. Sec. Acceptance Corp., 242 P.2d 873, 885 (Cal. 1952) ("Legitimate charges for specific items of actual service and expense are not  . . . compensation for the loan of money; i.e., such charges are not interest[.]").  "Such items, however, must be confined to specific service or expense incidental to the loan incurred in such a way as to preclude it being a device through which additional interest or profit on the loan may be exacted." Id. at 884.  Accordingly, courts must determine whether an additional charge is a legitimate fee for expenses incidental to the loan or whether it is simply disguised interest. Cambridge Dev. Corp., 90 Cal. Rptr. at 335.  Courts must look to all the facts related to a transaction, "not merely to the fact the charge was stated as a lump sum or as a percentage of the total loan." Id.
/ / / /

Here, all of the interest charges and fee amounts are indicated on the promissory notes. (See, e.g., TAC, Ex. 3 (promissory note signed by Plaintiff Kashimi).) The notes state that interest accrues at 0.84% per month. Id. Thus, the yearly interest rate totals 10.08%, which the parties agree is not usurious by itself, as it is lower than 5% over the discount rate. Nevertheless, Plaintiffs assert that the additional vehicle inspection fees, 1.08% per month, and account servicing fees, also 1.08% per month, are really disguised interest. Accordingly, Plaintiffs argue that, in total, the Plaintiffs are being charged interest at a rate of 36% per year, which amounts to usury. In support of their argument that the fees are really interest in disguise, Plaintiffs direct the court to the language of the notes, the fact that the charges were based on the amount of debt rather than the number of cars, and, without providing specific citations, to the fact that the Plaintiffs assert in declarations that Defendants never conducted the inspections and servicing.

In response, Defendants direct the Court to Judge Orfield's ruling on Plaintiffs' demurrer to Defendant SAIF, Inc.'s counterclaim before this case was removed, in which the court determined that the agreements were not usurious on their face. (Defendants' Request for Judicial Notice in Support of Defendants'/Counterclaimant's Opposition to Plaintiffs' Motion for Summary Judgment, Ex. A.) Next, Defendants present the declarations of Thomas Sterling, in which he states that the fees were to protect the interests of Secured Assets of California and SAIF, Inc., that SAIF, Inc. hired an independent contractor to conduct the inspections, that Sterling believes the inspections were conducted, and that Sterling personally did some of the inspections and servicing himself when the independent contractor was not available. (See Decl. of Thomas Sterling in Opposition to Plaintiffs' Motion for Summary Judgment ("9/18 Sterling Decl.") at ¶¶ 3, 4; see also 8/31 Sterling Decl. at ¶¶ 35-44.)

Because the interest stated on the notes was below the maximum allowed rate, and because Plaintiffs base their usury claim on additional fees indicated in the notes, this is not a case where the Court "can easily determine whether a certain interest charge

1   does or does not exceed the lawful rate." <u>Domarad</u>, 76 Cal. Rptr. at 540.  Thus, as

2   Judge Orfield found in ruling on the initial demurrer, the notes are not usurious on their

3   face.

4          Given that the notes are not usurious on their face, the crucial issue is whether the

5   vehicle inspection and account servicing fees were disguised interest charges or valid

6   "expense items for investigating, appraising, inspecting and otherwise servicing the

7   loan." <u>Cambridge Dev. Co. v. U. S. Financial,</u> 90 Cal. Rptr. 333, 335 (Cal. Ct. App.

8   1970).  While Plaintiffs point to the fact that the fees were based on the amount of the

9   loans, courts must look to all the facts related to the transaction, "not merely to the fact

10  the charge was stated as . . . a percentage of the total loan." <u>Cambridge Dev. Corp.</u>, 90

11  Cal. Rptr. at 335.  If Defendants conducted the account servicing and the vehicle

12  inspections, the associated fees would be valid "expense items for investigating,

13  appraising, inspecting and otherwise servicing the loan," as the inspections and

14  servicing would assist in tracking and protecting the collateral.  Thus, the fees would

15  be related to "specific service[s] or expense[s] incidental to the loan" <u>See</u> <u>Klett</u>, 242

16  P.2d at 884.  If, on the other hand, Defendants did not conduct the servicing and

17  inspections, then those fees were simply disguised interest charges, as they would be

18  additional fees charged to Plaintiffs for the loans, unrelated to any legitimate expenses

19  for investigation or servicing.  Accordingly, if Defendants did not conduct the

20  inspections and servicing, then the notes contained usurious interest provisions.

21         Because the Court has insufficient information regarding whether the servicing

22  and inspections occurred, the Court DENIES Plaintiffs' motion as to whether the notes

23  are usurious as a matter of law.  Additionally, the Court notes that, even if Defendants

24  did not conduct the servicing and investigations and the notes are determined to contain

25  usurious interest charges, the law is clear that such a finding "do[es] not affect the right

26  of the payee to recover the principal amount of the note when due." <u>Epstein</u>, 177 Cal.

27  Rptr. at 837.  Thus, Plaintiffs' assertion that the entire promissory notes, including

28  principal, are void because of usury is without merit.

**2. Unconscionability**

Next, Plaintiffs assert that the notes are void because the interest rate is unconscionable.  California Civil Code § 1670.5(a) sets forth the consequences of finding a contract unconscionable.  Section 1670.5(a) provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5(a).  Unconscionability has both a substantive and procedural component. Carboni v. Arrospide, 2 Cal. Rptr. 2d 845,848 (Cal. Ct. App. 1991). The procedural aspect refers to "to an inequality of bargaining power resulting in no meaningful choice for the weaker party," or to "'surprise,' which occurs when the supposedly agreed-upon terms are hidden in a prolix document." Id.  "'Substantive' unconscionability, on the other hand, refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made." Id.  While typically both procedural and substantive unconscionability must be present to void a contract or clause, "there is a sliding scale relationship between the two concepts: the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause." Id. at 849.

California decisions finding a contract unconscionable based upon an excessive interest rate are rare.  Indeed, apparently only one California case has held a contract unconscionable based on the interest rate.  See Carboni, 2 Cal. Rptr. 2d at 847-48 (in holding contract unconscionable, noting that no previous California decision applied the doctrine of unconscionability to a high interest rate, and noting that the doctrine had rarely, if ever, been applied in that context elsewhere).  The lack of cases relying on unconscionability in this context is likely explained by the presence of usury laws in California.  See, e.g., 2-5 Corbin on Contracts § 5.16 (2006) ("*in the absence of a usury statute*, a contract that requires the payment of a very high rate of interest will be

enforced, up to the point at which 'unconscionability' becomes an operative factor." (emphasis added)). Nevertheless, in <u>Carboni</u>, the California Court of Appeals held an interest rate of 200% on a loan to pay for parents' medical expenses unenforceable. 2 Cal. Rptr. 2d at 851. The Court noted initially that, because the loan was made by a licensed real estate broker, usury laws did not apply. <u>Id.</u> at 847 n.4. The court found that, where the rate was at least ten times the market rate for similar loans, and where the debtor was under emotional distress due to his parents' illness when he entered into the loan, the loan was substantively and procedurally unconscionable. <u>Id.</u> at 849-51.

Here, similar to their argument regarding usury, Plaintiffs argue that the stated interest rate in combination with the fees amounts to a 36% interest rate. Thus, Plaintiffs ask the Court to void the agreements as unconscionable as a matter of law. Further, Plaintiffs argue that the agreements were procedurally unconscionable, in that Defendants had much greater bargaining power than Plaintiffs. In support, Plaintiffs assert, without any evidentiary support, that their Iranian ethnicity limited their options for obtaining a loan, which in turn created a disparity in bargaining power with Defendants.

As discussed with regard to usury, however, on their face the notes only indicate an interest rate of 10.08%. Given that the stated rate is below the maximum allowed under the usury laws, it is clearly not substantively unconscionable by itself, and whether the other fees amount to disguised interest is a dispute of material fact. Further, as to procedural unconscionability, the Plaintiffs have not provided any evidentiary support for their claims that they were at a bargaining disadvantage. In short, summary judgment is inappropriate, and the Court DENIES the Plaintiffs' motion for summary judgment seeking to declare the agreements void as a matter of law on unconscionability grounds.

### 3.     Refunds, Offsets, and Credits for Usurious Payments

Next, Plaintiffs assert that, if the Court does not find that the notes are void as a matter of law, they nevertheless are entitled to summary judgment on their claims for

refunds, offsets, or credits for any usurious payments. As discussed above, however, whether the notes are usurious depends upon whether Defendants conducted the account servicing and vehicle inspections. Further, the Plaintiffs have not directed the Court to any evidence as to the amount they have paid on the notes. Accordingly, the Court DENIES the Plaintiffs' motion for summary judgment as to their claims for refunds, offsets, and credits for usurious payments.

### 4.    Accounting

Plaintiffs ask the Court to grant summary judgment on their claim for an accounting. An accounting is an equitable cause of action, and it may be sought where the accounts are sufficiently complex. See, e.g., Union Bank v. Superior Court, 37 Cal. Rptr. 2d 653, 666 (Cal. Ct. App. 1995); Civic Western Corp. v. Zila Indus., Inc., 135 Cal. Rptr. 915, 923 (Cal. Ct. App. 1977). "An action for an accounting . . . is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties in which proceeding the court will adjudicate the amount due, administer full relief and render complete justice[.]" Verdier v. Superior Court, 199 P.2d 325, 327 (Cal. Ct. App. 1948). An accounting is typically a two step process. In the first, the court determines the right to an accounting, and in the second, the court either refers the matter for an accounting or conducts the accounting itself. See, e.g., 1A C.J.S., Accounting, §§ 45, 47; 1 Am. Jur. 2d, Accounts and Accounting, § 66.

In support of their request for an accounting, Plaintiffs point to the uncertainty as to the amounts owed on the loans. Other than Defendant Thomas Sterling's declaration, the Court has scant evidence of the total amounts loaned, any amounts repaid, the amount of interest and fees paid by each Plaintiff, and the amounts currently outstanding on the loans. Further, Plaintiffs are entitled to an offset of any usurious interest payments. In their opposition, Defendants simply assert that Plaintiffs have enough information from their own bank statements and cancelled checks to determine the amounts owed. Given the information before the Court, however, the Court exercises its equitable powers and GRANTS Plaintiffs' motion for summary judgment

and finds that Plaintiffs are entitled to an accounting.  Accordingly, the Court will conduct a hearing "in equity for the purpose of obtaining a judicial settlement of the accounts of the parties."  Verdier, 199 P.2d at 327.

### 5. Breach of Contract

Next, Plaintiffs argue that the Court should find the agreements void as a matter of law because Defendants breached the contracts.  The Plaintiffs cite to no legal authority in support of their position, and they provide no specific citations to evidentiary support.

First, Plaintiffs assert that the security and buy back agreements prohibited assignments, and, accordingly, Defendants breached the contract by any assignment to SAIF, Inc.  As this Court has ruled in several orders, however, by their plain language the security and buy back agreements only address the assignment of duties and obligations, not the assignment of rights.  Section 8.5 states: "Neither party shall assign the duties or obligations of this Agreement without the express written consent of the other party."  (TAC, Ex. 1 ("Agreement") at § 8.5.)  This interpretation is confirmed by § 6.0 of the Agreement, which states that the terms of the Agreement "shall inure to the benefit of SAC, its successors and assigns, and any other holder who derives from SAC title to or any interest in any of the liabilities."  (Id. at § 6.0.)  Moreover, even assuming that the assignment of rights led to the termination of the Agreement, § 7.1.2 indicates that the duties and obligations of the borrowers would remain.  (See id. at § 7.1.2, stating that "[t]ermination of this Agreement for any reason shall not relieve Borrower of any obligations under this Agreement which are to be performed after termination, including, but not limited to, payment and collection terms contained herein.").  Therefore, rights under the contracts were assignable, and an assignment of rights would not amount to a breach of the agreements.

Next, Plaintiffs contend that a representation in the security and buy back agreements indicating that Secured Assets of California was a specialist in collateralizing business loans was a misrepresentation, as it was not a licensed lender

when the agreements were signed, and SAIF, Inc. was not a licensed lender until after the agreements were signed.  The recitals section of each security and buy back agreement contained the following language: "SAC specializes in collateralized business loans for capital expansion and/or inventory purchases with Buy-Back." (See, e.g., TAC, Ex. 1.)  On its face, this recital does not purport to bind Secured Assets of California to any obligation, but merely states a fact.  Even assuming that this language was somehow an enforceable promise by SAC, the mere fact that Secured Assets of California, and later SAIF, Inc., did not have a lender's license does not in any way amount to a breach of that promise.  Plaintiffs have not alleged that, contrary to the language of the recital, Secured Assets of California or SAIF, Inc. did not specialize in collateralized business loans for inventory purchases.  Accordingly, Defendants did not breach this portion of the contract by not having a lending license.

Plaintiffs also contend, again without citation to legal authority and without specific citations to the evidentiary record for support, that the security and buy back agreements fail for lack of consideration.  According to Plaintiffs, they obtained no benefit from the account servicing fee and the vehicle inspection fees, and thus, the agreements lacked consideration.  In declarations filed with Plaintiffs' motion, and again in declarations filed with their reply, Plaintiffs assert that the inspections were not conducted and that they did not receive account servicing.   (See, e.g., Decl. of Mohammad Kashani attached to Plaintiffs' Motion for Summary Judgment; Supp. Decl. of Manal Naoom in Reply.)  At other points in their briefing, Plaintiffs refer to the alleged lack of inspections and account servicing as breaches of the security and buy back agreements, rather than as demonstrating lack of consideration.  Whether described in terms of consideration or breach, the thrust of Plaintiffs' argument is that the contracts are void because the inspections and servicing never occurred.  In response, Defendants submit the declaration of Thomas Sterling, in which he states that he hired an independent contractor to conduct the inspections and servicing, and he

/ / / /

states that he personally conducted some of the inspections and account servicing. (See 9/18 Sterling Decl. ¶¶ 3, 4.)

Even assuming for the sake of argument that the services were not performed, Plaintiffs provide no evidence for their view that these services were to benefit them, as opposed to Defendants. Defendants, on the other hand, in arguing that these services were solely for their benefit, present evidence of their need for the inspections and account maintenance in light of the risky nature of their lending activities. (8/31 Sterling Decl. ¶¶ 36-45.) According to Defendant Sterling, Defendants began the inspections and account monitoring in response to his investigation of the financing of used car dealers by the savings and loan industry. (Id. ¶ 39.) He believed Defendants needed stricter measures for monitoring collateral to avoid some of the problems encountered by the savings and loan industry in prior years. (Id. ¶¶ 39-42.) Thus, Defendants have submitted evidence that the inspections and account servicing were included in the agreements solely to protect the Defendants' interests in the collateral, not as an additional benefit to the Plaintiffs. In sum, Plaintiffs have not shown as a matter of law that the services were for their benefit, and the evidence as to whether the services were performed is in dispute. Thus, Plaintiffs' claim that the Court should rule as a matter of law that the contracts are void because Defendants failed to conduct inspections and account servicing fails.

In sum, the Court DENIES Plaintiffs' motion for summary judgment asking the Court to find the agreements void because Defendants breached the agreements.

**6. Standing of SAIF, Inc.**

Plaintiffs contend that SAIF, Inc. has no standing to enforce the agreements, and thus, they ask the Court to grant summary judgment in their favor on all of Defendant SAIF, Inc.'s claims. Plaintiffs again argue that the contracts terminated upon any assignment, and thus, any assignment terminated SAIF, Inc.'s rights to enforce the agreements. As discussed above and in previous orders, the rights under the contracts were assignable, and assignment alone would not preclude SAIF, Inc. from enforcing

the obligations.[2]  In their reply, Plaintiffs assert that SAIF, Inc. did not engage in a de facto merger because it did not follow proper corporate formalities.  In support, Plaintiffs state that the corporate veil should be pierced where corporate formalities are not followed, and they state that Defendant Sterling should not be afforded shareholder protection.  Plaintiffs do not explain, however, how piercing the corporate veil and denying shareholder protection to Defendant Sterling is relevant to whether SAIF, Inc. engaged in a de facto merger.  Accordingly, this argument fails.  In sum, the Court DENIES Plaintiffs' motion for summary judgment on the ground that SAIF, Inc. has no standing to enforce the agreements.

**7.     Defendants' Objection and Request to Strike Plaintiffs' Reply and Supplemental Evidence**

On September 28, 2006, Defendants filed an objection and request to strike Plaintiffs' reply and supplemental evidence submitted with the reply.  (Doc. Nos. 133 & 134 - filed twice.)  As to objections over timeliness and length, the Court overrules those objections.  Accordingly, the Court permits the filing of Plaintiffs' replies in support of their motion for summary judgment on September 26, 2006 and October 6, 2006.  (Doc. Nos. 126 and 144.)  Finally, as to Defendants' evidentiary objections, to the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence.  To the extent the evidence is not proper, the Court did not consider it.

**B.     Defendants' Motion for Summary Judgment on Plaintiffs' Claims**

Defendants move for summary judgment on several of Plaintiffs' claims.  First, Defendants argue that  the Court should grant partial summary judgment on Plaintiffs'

---

[2] Plaintiffs also ask the Court to find that Defendants are collaterally estopped from arguing that the agreements are assignable, relying on a state trial court ruling from Clark County, Nevada in Wexler v. Polich, Case No. A452753.  This Court has already ruled that rights under the agreements are assignable.  Moreover, collateral estoppel would not apply here, as the ruling in Wexler is not a final judgment for purposes of collateral estoppel.  See, e.g., Abelson v. Nat'l Union Fire Ins. Co., 35 Cal. Rptr. 2d 13, 19 (Cal. Ct. App. 1994) ("[A] judgment is not final for purposes of collateral estoppel while open to direct attack, e.g., by appeal.").

claims for offsets, refunds, and credits of usurious payments because of the applicable statutes of limitations and because SAIF, Inc. subsequently obtained a lending license. Second, Defendants contend that the Court should dismiss Plaintiffs' claims for breach of contract.  Third, Defendants argue that the Court should dismiss Plaintiffs' fraud claims because the statements are not actionable.  Fourth, Defendants ask the Court to dismiss Plaintiffs' claims for unfair business practices, asserting that Plaintiffs have no basis for such a claim.  Fifth, Defendants seek summary judgment on Plaintiff Javad Mousavinia's cause of action for interference with prospective economic advantage because he has not submitted any proof relating to future economic opportunities. Sixth, Defendants ask the Court to dismiss in part Plaintiffs' RICO claims because the claims are based upon the usury claims, and those claims are limited by the applicable statute of limitations and SAIF, Inc.'s subsequent licensing.  Seventh, Defendants ask the Court to dismiss Plaintiffs' claims for slander, arguing that they are not based on any false statement.  Eighth, Defendants contend that the Court should dismiss Plaintiffs' claims for conversion because they have not shown that Defendants exercised unlawful authority over any of Plaintiffs' property.  Ninth, Defendants argue that the Court should dismiss Plaintiff LTM Auto Sales, Inc. because no corporation by that name exists and because it has not requested any relief in the TAC.  Finally, Defendants argue that the Court should dismiss Defendant Carole Sterling because she has had no involvement in any aspect of this dispute.

### 1.    Refunds, Offsets, and Credits of Usurious Payments

Defendants ask the Court to grant partial summary judgment as to Plaintiffs' claims for refunds, offsets, and credits of usurious payments.  Defendants make two primary arguments.  First, they argue that the relevant statutes of limitations bar part of Plaintiffs' claims.  Second, they contend that SAIF, Inc.'s subsequent license precludes and purges any usury claims, as licensed finance lenders are exempt from the usury laws.  As discussed below, the Court GRANTS Defendants' motion on statutes of limitations grounds, but DENIES Defendants' motion based on the purging doctrine.

### a. Statutes of Limitations

The statute of limitations for affirmative actions to collect usurious interest payments is two years from the date of the usurious interest payment.  See, e.g., Stock v. Meek, 221 P.2d 15, 20 (Cal. 1950).  To recover the civil penalty of treble damages for any usurious interest payments, the borrower must bring suit within one year of the usurious interest payments.  West's Annotated Civ. Code §§ 1916-3; see also Stock, 221 P.2d at 20.  If a lender brings suit to recover on a defaulted loan and the borrower asserts in defense that she has made usurious payments, however, "none of the usurious payments, nor payments on renewal notes, are barred by limitation so as to preclude their use in the reduction of the principal debt."  Simmons v. Patrick, 27 Cal. Rptr. 347, 353 (Cal. Ct. App. 1963) (quoting Shirley v. Britt, 313 P.2d 875, 877 (Cal. Ct. App. 1957)).

Here, Defendants seek partial summary judgment on Plaintiffs' affirmative claims to recover usurious payments.  Thus, the one and two year statutes of limitations apply to Plaintiffs' claims, absent some other consideration.  Plaintiffs acknowledge the applicability of the two statutes of limitation to affirmative claims for relief, but state that their failure to file in a timely manner was excusable neglect because they were unaware of California's usury laws.  They do not, however, claim that they were unaware of the facts giving rise to a cause of action for usury.  The Plaintiffs cite to no case, and the Court has not found one, where lack of knowledge of a law alone, as opposed to lack of knowledge of the facts underlying a cause of action, justified tolling a statute of limitations.  Plaintiffs filed their complaint on June 30, 2004.  Accordingly, Plaintiffs' affirmative claims to recover usurious interest payments are barred for any payments before June 30, 2002.  Further, to the extent Plaintiffs' seek treble damages, those claims are barred for any payments made before June 30, 2003.

In sum, the Court GRANTS Defendants' motion for summary judgment on statutes of limitations grounds, and Plaintiffs' affirmative claims to recover usurious payments are limited accordingly.  The Court notes that, in response to Defendants'

claims to collect on the notes, to the extent Plaintiffs can prove they made any usurious payments, "none of the usurious payments, nor payments on renewal notes, are barred by limitation so as to preclude their use in the reduction of the principal debt." Simmons v. Patrick, 27 Cal. Rptr. 347, 353 (Cal. Ct. App. 1963)

### b.   Subsequent Lender's License

Defendants also ask the Court to grant partial summary judgment on Plaintiffs' affirmative claims for offsets, refunds, and credits of usurious interest payments because SAIF, Inc. held a valid lenders license when it subsequently loaned money to Plaintiffs in addition to that indicated in the promissory notes.   According to Defendants, SAIF, Inc. held a valid California Finance Lenders License from September 5, 2002 until May 13, 2003, SAIF, Inc. loaned additional amounts to Plaintiffs during that period, and the licensed transactions purged any usury from the transactions entered before SAIF, Inc. had a license.

In support of their position, Defendants cite to Kogan v. Bergman, in which the California Court of Appeals ruled that a subsequent oral agreement to repay principal and interest below the usury limit could purge any usury from an earlier agreement. 53 Cal. Rptr. 371, 378 (Cal. Ct. App. 1966).  As the Court explained in Kogan, however, the purging doctrine only applies where the original usurious agreement is abandoned and replaced by a new agreement with lawful interest provisions.   Id. (citing Whittemore Homes, Inc. v. Fleishman, 12 Cal. Rptr. 235, 238 (Cal. Ct. App. 1961)). Thus, purging applied in Kogan because the parties orally agreed to rewrite the terms of the original loan so that it included an interest rate below the legal limit.  Id.  Here, however, the parties did not agree to abandon the original promissory notes in favor of new agreements when they entered into the later transactions while SAIF, Inc. held a license.  On the contrary, Defendants seek to enforce the original notes as written.  As Defendants themselves acknowledge, the subsequent transactions were for loans of additional funds, not to replace the original promissory notes.  Accordingly, the purging doctrine is inapplicable here, and Defendants' subsequent licensing does not protect the

1  earlier loans from the reach of California's usury laws.  Thus, the Court DENIES
2  Defendants' motion for partial summary judgment on the ground that SAIF, Inc.'s
3  subsequent licensing purged any usury from the original promissory notes.

4  **2.  Breach of Contract**

5  Next, Defendants argue that the Court should dismiss Plaintiffs' claims for
6  breach of contract.  To succeed on a claim for breach of contract, a plaintiff must show:
7  (1) the existence of a contract; (2) the plaintiff's performance or excuse for
8  nonperformance; (3) breach by the defendant; and (4) damages.  Walsh v. West Valley
9  Mission Community College Dist., 66 Cal.App.4th 1532, 1545 (1998) (citations
10 omitted).

11 In the complaint, Plaintiffs assert that Defendants breached the security
12 agreements and promissory notes when they failed to conduct vehicle inspections and
13 account servicing.  TAC, ¶¶ 95-98.  In their motion, Defendants argue that, because
14 these services were solely for the benefit of Secured Assets of California and its
15 successors, any lack of performance cannot form the basis of a breach of contract action
16 by Plaintiffs.  Plaintiffs only argument in response is that, if the inspections and account
17 servicing were solely for the benefit of Defendants, than the fees charged were  really
18 disguised interest that amounted to usury.

19 As discussed above, Plaintiffs filed declarations with their motion for summary
20 judgment in which they assert that the inspections and account servicing were not
21 performed, but they have not provided any evidence that the services were for their
22 benefit.  (See, e.g., Decl. of Mohammad Kashani attached to Plaintiffs' Motion for
23 Summary Judgment; Supp. Decl. of Manal Naoom in Reply.)  Defendants, on the other
24 hand, in arguing that these services were solely for their benefit, present evidence
25 indicating a need for inspections and account maintenance in light of the risky nature
26 of their lending activities. (8/31 Sterling Decl. ¶¶ 36-45.)  Moreover, Thomas Sterling
27 indicated in his declaration that he hired an independent contractor to conduct the
28 / / / /

1    inspections and servicing, and he states that he personally conducted some of the

2    inspections and account servicing.  (See 9/18 Sterling Decl. ¶¶ 3, 4.)

3         In short, Defendants have submitted evidence that the inspections and account

4    servicing were included in the agreements solely to protect the Defendants' interests in

5    the collateral, not as an additional benefit to the Plaintiffs.  Given that Plaintiffs have

6    not submitted any evidence in support of their position, Defendants are entitled to

7    summary judgment on this ground.  See, e.g., Anderson, 477 U.S. at 256 ("[A] party

8    opposing a properly supported motion for summary judgment may not rest upon mere

9    allegation or denials of his pleading, but must set forth specific facts showing that there

10   is a genuine issue for trial.").

11        In their response, although not based on allegations in the TAC, Plaintiffs claim

12   Defendants breached the agreements in several other ways.  First, Plaintiffs again argue

13   that any assignment of the security and buy back agreements breached the contracts.

14   As this Court has already ruled, and as discussed above, however, rights under the

15   agreements were assignable, and any assignment of rights would not constitute a breach

16   of the agreements.

17        Second, Plaintiffs argue that Defendants' failure to provide a proper accounting

18   breached the agreements.  Plaintiffs point to no provision of the agreements providing

19   for an accounting, nor do they point to any legal authority indicating a failure to provide

20   an accounting under these circumstances could form the basis for a breach of contract

21   action.  Accordingly, this argument fails.

22        Third, Plaintiffs argue Defendants breached the agreements by recording UCC-1

23   financing statements that described the collateral differently from the descriptions in the

24   security agreements.  According to Plaintiffs, the UCC-1 statements do not limit the

25   collateral to the lists of vehicles accompanying the security agreements, but also include

26   after acquired collateral.  In support of their position, Plaintiffs cite to cases holding that

27   the description of collateral in the security agreement defines the extent of the security

28   interest, and thus, financing statements cannot enlarge the collateral.  See, e.g., In re

1  Bakersfield Westar Ambulance, Inc., 123 F.3d 1243, 1248 (9th Cir. 1997); Dowell v.

2  D.R. Kincaid Chair Co., 481 S.E.2d 670 (N.C. Ct. App. 1997).  None of the cited cases,

3  however, stand for the proposition that filing a financing statement describing collateral

4  more broadly than the security agreement amounts to a breach of the security

5  agreement.   Thus, even assuming the UCC-1 statements describe the collateral

6  incorrectly, this would not provide the basis for a breach of contract action, but would

7  only allow Plaintiffs to attack the validity of the financing statements.   Therefore,

8  Plaintiffs cannot bring a breach of contract action based on the description of collateral

9  contained in the UCC-1 financing statements.

10      Fourth, Plaintiffs argue that Defendants breached the agreements by failing to

11  reduce the interest rates.   Plaintiffs' argument centers on the allegation that the

12  agreements include usurious interest provisions, and Plaintiffs maintain that failing to

13  reduce the rates to legal levels amounts to a breach of the agreements.   While,

14  depending on whether Defendants performed the servicing and inspections, Plaintiffs

15  may have a viable claim for usury based on the interest rates in the agreements, failing

16  to reduce allegedly usurious interest rates does not form the basis for a breach of

17  contract action.

18      Finally, as they argued in their motion for summary judgment, Plaintiffs assert

19  that, by failing to possess and maintain a lending license, Defendants breached a

20  representation in the security and buy back agreements indicating that Secured Assets

21  of California was a specialist in collateralizing business loans.  For the reasons set forth

22  above, Defendants did not breach this portion of the contract by not having a lending

23  license.

24      In sum, Plaintiffs have not provided any evidence in support of their breach of

25  contract claims alleged in the TAC.  Further, Plaintiffs' additional arguments in their

26  response to Defendants' motion fail as a matter of law.  Therefore, the Court GRANTS

27  Defendants' motion for summary judgment on Plaintiffs' breach of contract claims.

28  / / / /

1

### 3. Fraud

2       In Count V, Plaintiffs bring claims for fraud. (TAC, ¶¶ 99-160.) Plaintiffs assert

3  that Defendants made three types of fraudulent statements. First, they allege that

4  Defendants falsely represented that, after a few months, Defendants would reduce the

5  interest rate on the notes. (See, e.g., TAC, ¶ 100.) Second, Plaintiffs allege that

6  Defendants misrepresented that the loan and loan documents were standard and legal

7  in California. (See, e.g., TAC, ¶ 105.) Third, Plaintiffs allege that Defendants falsely

8  indicated that they were licensed lending specialists. (See, e.g., TAC, ¶108.)

9       To succeed on a claim for fraud, a plaintiff must show: (1) the defendant made

10  a false representation; (2) recklessly or knowingly; (3) with intent to induce reliance or

11  to deceive; (4) that the plaintiff justifiably relied on the false representation; and (5)

12  damages. Hinesley v. Oakshade Town Center, 37 Cal. Rptr. 3d 364, 367 (Cal. Ct. App.

13  2005) (citing Lazar v. Superior Court, 49 Cal. Rptr. 2d 377 (1996)).

14       Defendants ask the Court to grant summary judgment on Plaintiffs' fraud claims,

15  arguing that the statements are not actionable for several reasons.

16

### a. Lowering of Interest Rates

17       As to any representation that Defendants would reduce the interest rates on the

18  notes, Defendants assert that the alleged statements are too vague to have been relied

19  upon and that the statements contradict the plain language of the agreements. Plaintiffs

20  do not directly address the vagueness argument in their response, but only refer to a

21  declaration by Plaintiffs' counsel, Richard Miller, in which he states that Defendants'

22  account manager indicated to Plaintiffs that the interest rates would be lowered.

23  (September 18, 2006 Decl. of Richard Miller in Opposition to Defendants' Motion for

24  Summary Judgment ("9/18 Richard Miller Decl."), ¶ 12.) Statements by counsel are

25  not evidence. Even were the Court to consider this hearsay statement by Plaintiffs'

26  counsel, however, Plaintiffs have provided no evidence of any reliance on the alleged

27  representations. Further, Plaintiffs have not addressed how any reliance could be

28  reasonable given the express language to the contrary in the signed documents.

1    Accordingly, because Plaintiffs have not presented any evidence of reliance, their claim

2    based on representations that Defendants would lower the interest rates must fail, and

3    Defendants are entitled to summary judgment.  <u>See, e.g.</u>, <u>Celotex</u>, 477 U.S. at 325 (if

4    non-moving party fails to make a sufficient showing of an element of its case, moving

5    party is entitled to judgment as a matter of law).

6                   **b.        Representations Regarding Legality of Loan and Documents**

7           Next, with regard to Plaintiffs' allegations that Defendants misrepresented that

8    the loan and loan documents were standard and legal in California, Defendants argue

9    that these statements are not actionable because they were representations of law.  In

10   the absence of special circumstances, representations of law do not provide the basis for

11   a fraud claim.  <u>See, e.g.</u>, <u>Bledsoe v. Watson</u>, 106 Cal. Rptr. 197, 200 (Cal. Ct. App.

12   1973); <u>see also</u> <u>Haviland v. So. Cal. Edison Co.</u>, 158 P. 328, 331 (Cal. 1916) ("It is well

13   settled that such misrepresentations [of law], at least where there is no relation of trust

14   or confidence between the parties, do not amount to fraud[.]").  Here, none of the parties

15   to the transactions were attorneys, the parties bargained at arms length over the loan

16   documents, and neither party has alleged any special relationship between the parties.

17   Accordingly, any representation regarding the legality of the transaction or documents

18   was a representation of law, and as such, not actionable for fraud.  Moreover, Plaintiffs

19   have not directed the Court to any evidence that they relied upon these alleged

20   representations.  Instead, they cite to a declaration by Plaintiffs' counsel stating his legal

21   conclusion that Plaintiffs relied on the statements.  (<u>See</u> 9/18 Richard Miller Decl., ¶ 15

22   ("The Plaintiffs actually relied on the Defendant's oral and written misrepresentations

23   and would not have entered into the transaction but for the Defendant's

24   misrepresentations.").)   As noted above, statements by counsel are not evidence.

25   Because the alleged representations were statements of law, and because Plaintiffs have

26   not produced any evidence of reliance, their claim of fraud based on these statements

27   fails.

28   / / / /

### c.    Representations Regarding Status of License

Next, Defendants argue that Plaintiffs' claim based on alleged representations that Defendants were licensed must fail, as they contend the statements at issue did not contain misrepresentations, and even if they did, Plaintiffs have not provided any evidence of reliance or damages.  In their response, Plaintiffs direct the Court to the recitals sections of the security and buy back agreements, which state:  "SAC specializes in collateralized business loans for capital expansion and/or inventory purchases with Buy-Back." (See, e.g., TAC, Ex. 1.)  According to Plaintiffs, this recital amounted to a representation that Defendants possessed a California Finance Lenders license, which was not true at the time.  Plaintiffs also assert that Defendants made similar oral representations.  As discussed above with regard to Plaintiffs' breach of contract actions, however, on its face this recital does not purport to make any representation as to licensing status.  Moreover, even assuming this recital amounted to a representation that Defendants possessed a valid license, Plaintiffs have not produced any evidence of reliance or damages.  Instead, as discussed above, they direct the Court to a declaration by Plaintiffs' counsel in which he provides his legal conclusions as to reliance.  (See 9/18 Richard Miller Decl., ¶ 15.)  Statements by counsel are not evidence.  Accordingly, Defendants are entitled to summary judgment on this ground.

In sum,  for the reasons stated above, the Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' claims for fraud.

### 4.    Unfair Business Practices

In Count VI, Plaintiffs bring a claim for unfair business practices, alleging that Defendants improperly used the power of attorney provisions in the security agreements to create liens on vehicles for the purpose of making them unmarketable.  (See TAC, ¶ 163.)  Plaintiffs allege that Defendants took these actions to force Plaintiffs to abide by the agreements or to go out of business.  (See id. at ¶ 162.)
/ / / /

1    Further, Plaintiffs allege that Defendants took these actions to foreclose on the vehicles

2    and to enforce the individual guarantee agreements.  (See id.)

3         California Business and Professions Code § 17200, et seq. set forth the relevant

4    law with regard to unfair business practices.  Section 17200 provides:

5         As used in this chapter, unfair competition shall mean and include any
     unlawful, unfair or fraudulent business act or practice and unfair,
6         deceptive, untrue or misleading advertising and any act prohibited by
     Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the
7         Business and Professions Code.

8    Cal. Bus. & Prof. Code § 17200.  Courts may impose injunctive relief and other

9    remedies for unfair business practices.  Id. § 17203 et seq.  Courts have generally turned

10   to one of two tests in determining whether a business practice is "unfair" within the

11   meaning of the statute.  Some courts have found a practice to be unfair when "it offends

12   an established public policy or when the practice is immoral, unethical, oppressive,

13   unscrupulous or substantially injurious to consumers."  People v. Casa Blanca

14   Convalescent Homes, Inc., 206 Cal. Rptr. 164, 177 (Cal. Ct. App. 1984).  The

15   alternative test requires an "examination of [the business practice's] impact on its

16   alleged victim, balanced against the reasons, justifications and motives of the alleged

17   wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against

18   the gravity of the harm to the plaintiff."  Motors, Inc. v. Times Mirror Co., 162 Cal.

19   Rptr. 543, 546 (Cal. Ct. App. 1980).

20        In their motion, Defendants argue that the Court should grant summary judgment

21   on this claim because none of the allegations provide a cognizable basis for an unfair

22   business practices claim.  In particular, Defendants argue that the agreements each

23   created a power of attorney, each agreement created security interests, and there was

24   nothing unfair about Defendants using the power of attorney provisions to evidence the

25   security interests Plaintiffs voluntarily gave Defendants in the agreements.  Rather,

26   Defendants contend they used the provisions exactly as contemplated.

27        In response, Plaintiffs rely entirely on citations to the California Rules of Civil

28   Procedure and California state cases interpreting those rules, and they present no

evidence in support of their allegations forming the basis for this claim. Instead, they reference allegations in the TAC. Accordingly, because Plaintiffs have not produced any evidence tending to show any unfair business practices, the Court GRANTS Defendants' motion for summary judgment on this claim. See, e.g., Anderson, 477 U.S. at 256 (non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations").

### 5.      Interference with Prospective Economic Advantage

In Count VII of the TAC, Plaintiff Javad Mousavinia, d/b/a Cars-R-Us, brings a claim for interference with prospective economic advantage. (See TAC, ¶¶ 166-171.) Specifically, the TAC alleges Mousavinia expected future business with several used car purchasers. (Id. ¶ 167.) Plaintiff Mousavinia alleges that Defendants hindered his future business by refusing to deliver titles to the purchasers, claiming liens against the titles, and attempting to collect debts that these customers owed to Mousavinia. (Id. ¶ 169.)

To recover for this tort, a plaintiff must show:

(1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and wrongful conduct designed to interfere with or disrupt this relationship; (4) interference with or disruption of this relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful conduct.

Sole Energy Co. v. Petrominerals Corp., 26 Cal. Rptr. 3d 798, 819-20 (Cal. Ct. App. 2005). Because interfering with a prospective economic advantage is not wrongful in and of itself, "a plaintiff must plead and prove 'the defendant's interference was wrongful 'by some legal measure other than the fact of interference itself.'"" Id. at 820 (quoting Della Penna v. Toyota Motor Sales, U.S.A., Inc., 902 P.2d 740, 751 (Cal. 1995)). "An act is independently wrongful 'if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.'" Id. (quoting Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 954 (Cal. 2003)).

In support of their motion, Defendants argue that Plaintiff Mousavinia has not offered any proof that he had a probability of future economic benefit with any customers, has not offered any evidence that he suffered any harm, and has not offered any proof that the conduct was designed to interfere or disrupt his relationship with the customers.  Further, Defendants contend that all of the alleged conduct was permitted by the agreements between Mousavinia and Defendants.

In response, Plaintiff Mousavinia does not address any of Defendants' arguments, but cites to a California case interpreting California rules of procedure and states that Defendants cannot shift the burden of production to him based on legal argument alone.[3]  In their reply, Defendants argue that nothing in the Federal Rules of Civil Procedure or in case law interpreting those rules requires them to come forward with evidence negating the existence of the elements of a cause of action.

Interpreting Rule 56, the Supreme Court has explained that a party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  With regard to negating an element of a plaintiff's claim, however, the Court explained, "we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.  On the contrary, Rule 56(c), which refers to 'the affidavits, *if any*' (emphasis added), suggests the absence of such a requirement."  Id.  Similarly, Rule 56(a) and (b) note that a party may move for summary judgment "with or without

---

[3] Plaintiffs' opposition does not contain a section addressing Defendants' motion for summary judgment on Mousavinia's claim for interference with prospective economic advantage, Count VII of the TAC.  Plaintiffs' final section, however, which contains two paragraphs, purports to address Defendants' arguments as to Plaintiffs' Eighth, Ninth, and Tenth Causes of Action.  Given that Defendants have not moved for summary judgment as to the Eighth Cause of Action, and that Plaintiffs' opposition does not otherwise address Defendants' arguments regarding interference with prospective economic advantage, the Court treats Plaintiffs' reference to their Eighth Cause of Action as a typographical error.

1  supporting affidavits."  As the Supreme Court summarized in <u>Celotex</u>, "regardless of

2  whether the moving party accompanies its summary judgment motion with affidavits,"

3  the court should grant the motion so long as whatever is before the court demonstrates

4  that summary judgment is appropriate.  477 U.S. at 323.

5          Here, Defendants have argued that, as a matter of law, Plaintiff Mousavinia

6  cannot prove several of the elements for interference with prospective economic

7  advantage.  In response, Plaintiff Mousavinia produced no evidence going to prove

8  those elements.  In particular, Plaintiff Mousavinia has not produced any evidence of

9  prospective business opportunities or any evidence of any harm he has suffered.

10  Moreover, beyond his allegation in the TAC that Defendants hindered his ability to

11  conduct business, he has not presented any evidence of Defendants' independently

12  wrongful conduct.  <u>See</u> <u>Korea Supply Co.</u>, 63 P.3d at 954.  Accordingly, because

13  Plaintiff Mousavinia has not demonstrated an issue of material fact, and because

14  Defendants have shown that they are entitled to judgment as a matter of law, the Court

15  GRANTS Defendants' motion for summary judgment as to Plaintiff Mousavinia's

16  claim for interference with prospective economic advantage.

17          **6.     RICO**

18          Next, Defendants argue that Plaintiffs' RICO claim, which is based upon

19  allegations that Defendants conspired to collect usurious interest, should be limited in

20  the same manner as Plaintiffs' affirmative usury claims, as discussed above in sections

21  B.1.a. and b.  Thus, Defendants argue that the applicable statutes of limitations, SAIF,

22  Inc.'s subsequent license, and the purging doctrine should limit any recovery.  Plaintiffs

23  do not address Defendants' arguments in their opposition, but again cite to a California

24  case interpreting California rules of procedure and state that Defendants cannot shift the

25  burden of production to them based on legal argument alone.

26          For the reasons set forth in sections B.1.a. and b. above, the applicable statutes

27  of limitations limit any recovery, but the purging doctrine does not apply.  Accordingly,

28  because Plaintiffs filed their complaint on June 30, 2004, Plaintiffs' affirmative claims

1   to recover based upon usurious interest payments are barred for any payments before

2   June 30, 2002.

3   **7.   Slander**

4   In Count X of the TAC, Plaintiffs bring a claim for slander.  According to

5   Plaintiffs, Defendants Thomas Sterling and SAIF, Inc. published a notice in the San

6   Diego Union Tribune indicating that Plaintiffs Naoom, Kashani, Ghadimi,

7   Khomamizadeh, and Mousavinia were in default on contracts with SAIF, Inc. and that

8   SAIF, Inc. had a security interest in Plaintiffs' vehicles.  (TAC, ¶¶ 203-04.)  Plaintiffs

9   allege that the representations that SAIF, Inc. had a contractual relationship and a

10  security interest in collateral were false, as the agreements prohibited assignments, and

11  thus, SAIF, Inc. could not obtain any rights from Secured Assets of California.  (Id. at

12  ¶ 205.)  Accordingly, Plaintiffs allege that the representation damaged Plaintiffs'

13  business reputations and, thus, amounted to slander per se.

14  California has codified the requirements for slander per se, and with regard to a

15  plaintiff's profession:

16      Slander is a false and unprivileged publication, orally uttered, and also
        communications by radio or any mechanical or other means which . . .
17      [t]ends directly to injure him in respect to his office, profession, trade or
        business, either by imputing to him general disqualification in those
18      respects which the office or other occupation peculiarly requires, or by
        imputing something with reference to his office, profession, trade, or
19      business that has a natural tendency to lessen its profits

20  Cal Civ. Code § 46.

21  In support of their motion, Defendants contend that rights under the agreements

22  were assignable, and they note that this Court has already ruled that assignment alone

23  would not void the agreements or preclude SAIF, Inc. from enforcing the agreements.

24  Accordingly, Defendants argue that Plaintiffs' allegation that the publication was false

25  necessarily fails.  As mentioned above, Plaintiffs do not respond to Defendants'

26  arguments in their opposition, but simply cite to a California case interpreting

27  California rules of procedure and state that Defendants cannot shift the burden of

28  production to them based on legal argument alone.

As discussed above, and as this Court has ruled previously, rights under the agreements were assignable. Accordingly, Plaintiffs' allegation that the publication was false fails as a matter of law, as assignment would not preclude SAIF, Inc. from enforcing the agreements. Additionally, the Court notes that the statements in question were published in a newspaper, but slander per se applies to oral representations. Accordingly, the Court GRANTS summary judgment for Defendants on Plaintiffs' claims for slander.

### 8. Conversion

Plaintiffs bring a claim for conversion in Count XI of the TAC. According to Plaintiffs, Defendants unlawfully imposed the power of attorney provisions in the security and buy back agreements. (TAC, ¶ 209.) Plaintiffs allege that Defendants used the power of attorney provisions to execute registration forms and UCC-1 financing statements to gain possession of vehicles rightfully belonging to Plaintiffs. (Id.) As a result, Plaintiffs claim Defendants exercised possession and control over the vehicles even though Defendants had no lawful authority to do so. (Id.)

"Conversion is the wrongful exercise of dominion over the property of another." Spates v. Dameron Hosp. Assn., 7 Cal. Rptr. 3d 597, 608 (Cal. Ct. App. 2003). To prove a claim for conversion, a plaintiff must show: (1) plaintiff had an ownership interest or right to possession at the time of conversion; (2) the defendant converted the property by a wrongful act or by a wrongful disposition of property rights; and (3) damages. Id. A plaintiff need only show that the defendant assumed ownership or control or applied the property for his own enjoyment. Id. The defendant's motive, bad faith, or lack of knowledge is generally immaterial. Burlesci v. Peterson, 80 Cal. Rptr. 2d 704, 706 (Cal. Ct. App. 1998).

In support of their motion, Defendants argue that SAIF, Inc. had rights under the agreements as a secured creditor. Further, Defendants contend SAIF, Inc. simply used the power of attorney provisions as contemplated under the agreements Plaintiffs signed. Plaintiffs do not address Defendants' arguments in their opposition, but again

1   cite to a California case interpreting state rules of procedure and argue that Defendants

2   cannot shift the burden of production to them based on legal argument alone.

3       Plaintiffs have not directed the Court to any evidence in support of their

4   conversion claims.  In particular, they have not provided any evidence tending to show

5   why Defendants' use of the power of attorney provisions in the agreements, which

6   Plaintiffs signed, was wrongful.  To the extent their allegations are based upon the

7   argument that SAIF, Inc. could not enforce the agreements because rights under the

8   agreements were not assignable, that argument fails as discussed in previous orders and

9   above.  In short, because Plaintiffs have not provided any evidentiary support for their

10  claims, the Court GRANTS summary judgment on Plaintiffs' claims for conversion.

11  See, e.g., Celotex, 477 U.S. at 325.

12      **9.    Dismissal of Plaintiff LTM Auto Sales, Inc.**

13      Defendants ask the Court to dismiss LTM Auto Sales, Inc. as a party to this case.

14  In support they present the results of a search with the California Secretary of State

15  indicating that no entity named "LTM Auto Sales, Inc." exists.  (Defendants' Request

16  for   Judicial Admission in Support of Defendants'/Counterclaimant's Motion for

17  Summary Judgment, Ex. A.)  They also submit a copy of an application filed by

18  Plaintiff Manal Naoom with the California Department of Motor Vehicles in which she

19  indicated her business name as "LTM Auto Sales." (Id., Ex. B.)  Further, Defendants

20  point out that the TAC does not seek any relief on behalf of LTM Auto Sales, Inc.  In

21  response, Plaintiffs acknowledge mistakes in the TAC, and they state that certain

22  references in the complaint should be to LTM Auto Sales.  Finally, in their reply,

23  Defendants clarify that they do not seek to dismiss all claims brought by Manal Naoom

24  d/b/a LTM Auto Sales, but only seek dismissal of any claims purportedly brought by

25  LTM Auto Sales, Inc., the nonexistent entity

26      Because the facts are undisputed that LTM Auto Sales, Inc. does not exist, the

27  Court GRANTS Defendants' motion for summary judgment as to all claims brought by

28  LTM Auto Sales, Inc. and DISMISSES LTM Auto Sales, Inc. as a party.

**10.    Dismissal of Claims Against Defendant Carole Sterling**

Next, Defendants ask the Court to dismiss Defendant Carole Sterling as a party to this action.  Defendants contend that the facts are undisputed that she was never a partner in Secured Assets of California and that she has had no personal involvement in any of the events giving rise to the litigation.  In response, Plaintiffs do not offer any evidence of Defendant Carole Sterling's involvement in any relevant activities giving rise to their claims.  Instead, they rely on a declaration from Plaintiffs' counsel and assert that: (1) SAIF, Inc. is run from the Sterlings' home; (2) Carole Sterling likely participated in the activities at some level and has knowledge of pertinent information; (3) Carole Sterling has participated in business activities in the past; and (4) Carole Sterling is a shareholder of SAIF, Inc.  Without more, the fact that Carole Sterling may have relevant information does not form the basis for any potential liability, but simply indicates that she may be a knowledgeable witness.  Accordingly, given that Plaintiffs have not presented any evidence of her involvement, the Court GRANTS Defendants' motion for summary judgment as to all claims against Carole Sterling and DISMISSES Defendant Carole Sterling from this case.

**C.    SAIF, Inc.'s Motion for Summary Judgment on Breach of Contract Claims**

SAIF, Inc. seeks summary judgment on its breach of contract claims in Counts I-X of its counterclaim. (Doc. No. 87.)  These claims are based on alleged breaches of the security and buy back agreements and breaches of the personal guarantee agreements. (See First Amended Counterclaim, ¶¶ 10-87.)  To succeed on a claim for breach of contract, a plaintiff must show: (1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) breach by the defendant; and (4) damages.  Walsh v. West Valley Mission Cmty. Coll. Dist., 78 Cal. Rptr. 2d 725, 733 (Cal. Ct. App. 1998) (citations omitted).  In support of its motion, SAIF, Inc. argues that Plaintiffs do not dispute that they signed the agreements, Plaintiffs do not dispute that they received loans, and Plaintiffs do not contend that they have fully repaid the amounts due under the agreements.  Accordingly, SAIF, Inc. asks the Court to grant

summary judgment as to the unpaid principal, leaving only proof of interest, costs, and fees at trial.

In response, Plaintiffs do not contend that they have repaid the loans, but make several arguments as to why the agreements are unenforceable.  First, Plaintiffs contend that SAIF, Inc. is not the successor in interest to Secured Assets of California by either assignment or de facto merger, and thus, it has no right to enforce the agreements.[4] Second, Plaintiffs argue that, because Secured Assets of California did not have a license when it entered into the agreements, the agreements are void.  Third, Plaintiffs argue that the agreements were usurious and void as a matter of law.  As explained below, Plaintiffs' arguments fail as a matter of law, and the Court grants partial summary judgment in favor of SAIF, Inc. as to unpaid principal under the agreements.

### 1.    SAIF, Inc.'s Rights to Enforce Agreement

Plaintiffs first contend that the agreements prohibited assignments, and thus, Secured Assets of California could not validly assign its rights under the agreements. As this Court has ruled in previous orders, and as discussed above, the agreements did not prohibit the assignment of rights.  Next, Plaintiffs contend that Defendants have not produced any proof of an assignment between Secured Assets of California and SAIF, Inc.  In response, SAIF, Inc. points to the declaration of Thomas Sterling, a principal in both entities, in which he states that SAIF, Inc. took over all the business, assets, and liabilities of Secured Assets of California.  (See 8/31 Sterling Decl. ¶¶ 28-31.)  Thus, SAIF, Inc.'s evidence of an assignment is unopposed.

Moreover, beyond proof of an assignment of rights under the agreements, SAIF, Inc. has presented uncontradicted evidence that it took over the rights of Secured Assets of California by operation of law through a de facto merger.  As an initial matter, California law allows the merger of a general partnership, such as Secured Assets of

---

[4] Plaintiffs also assert that Defendants should be collaterally estopped from arguing that the agreements are assignable, relying on the state trial court ruling from Clark County, Nevada in Wexler v. Polich, Case No. A452753.  As noted previously, however, collateral estoppel does not apply here.

California, with a corporation, such as SAIF, Inc.  <u>See</u> Cal. Corp. Code § 174.5 (defining "other business entity" to include general partnerships) and § 1113 (setting forth the requirements for the merger of a corporation and an "other business entity"). Courts look to five factors in determining whether an asset transfer results in a de facto merger:  (1) whether the consideration paid for the assets was solely stock of the purchaser or a parent company; (2) whether the purchaser continued the same business after the sale; (3) whether the shareholders of the seller become shareholders of the purchaser; (4) whether the seller liquidated; and (5) whether the buyer assumed the liabilities necessary to carry on the business of the seller.  <u>Marks v. Minnesota Mining & Mfg. Co.</u>, 232 Cal. Rptr. 594, 598 (Cal. Ct. App. 1986).  The crucial fact is whether a "transaction discloses to us that its intrinsic structure and nature, unlike a sale of assets for cash, was of a type in which the corporate entity was continued and all liability was transferred."  <u>Id.</u> at 599.  Courts will find a de facto merger where "[a]ll the indicia of a merger are present."  <u>Id.</u>

In his declaration, Thomas Sterling states that SAIF, Inc. has carried on the business formerly conducted by Secured Assets of California, the sole consideration in the merger was stock, the partners of Secured Assets of California became the shareholders of SAIF, Inc., and SAIF, Inc. took on all liabilities of Secured Assets of California.  (8/31 Sterling Decl. ¶¶ 28-31, 34.)  Thus, the uncontradicted evidence demonstrates that SAIF, Inc. has taken on all the assets and liabilities of Secured Assets of California and has otherwise met the five factors set forth in <u>Marks</u>.  Accordingly, the Court finds that SAIF, Inc. became the successor to Secured Assets of California because "[a]ll the indicia of a merger are present," <u>Marks</u>, 232 Cal. Rptr at 599.

In short, whether by an assignment or by de facto merger, the undisputed facts indicate that SAIF, Inc. is the successor to Secured Assets of California and has standing to enforce the agreements.

## 2.    Lack of California Lenders License

Next, Plaintiffs argue that the agreements are void and unenforceable because

Secured Assets of California did not have a lending license when it entered into the agreements.  In support, Plaintiffs cite to language from a 1914 California Supreme Court case in which the court stated:

> The general doctrine now well settled by the authorities is that when the object of the statute or ordinance in requiring a license for the privilege of carrying on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it for the protection of the public or in the interest of public morals, health, or police, the imposition of the penalty amounts to a prohibition against doing the business without a license, and a contract made by an unlicensed person in violation of the statute or ordinance is void.

Wood v. Krepps, 143 P. 691, 692 (Cal. 1914) (finding loan agreement was not void where the lending finance company failed to pay the licensing fee required by the municipal ordinance and where licensing fee was imposed for revenue purposes); compare Levinson v. Boas, 88 P. 825 (Cal. 1908) (transaction by unlicensed pawn broker void because broker did not have license).  In Wood, however, the Court declined to void the contract, highlighting that the legislature had not outlawed the business of loaning money, just conducting the business without a license:

> There is no law in this state making the business of loaning money on personal property illegal. It is a legitimate branch of commercial business which the state has only regulated to the extent of fixing the maximum rate of interest.  The business itself, however, is not affected. It is neither malum in se nor malum prohibitum. . . .  Any one may carry it on, the only condition attached to doing so being that the person engaging in it must obtain a license. The only penalty imposed is that if he does not do so, he will not only be subject to a civil action at the instance of the city, but likewise to a penalty in a criminal proceeding for doing business without having obtained it. . . .  The ordinance does not declare that a contract, made by any one in the conduct of the various businesses for which licenses are provided to be procured under the ordinances, shall, if a license is not obtained, be invalid[.]

Wood, 143 P. at 693.

As a general rule, if a statute prohibits or penalizes specific conduct, courts will not enforce contracts based on such conduct.  R.M. Sherman Co. v. W.R. Thomason, Inc., 236 Cal. Rptr. 577, 580 (Cal. Ct. App. 1987).  With regard to licensing statutes, however, some courts have noted that "a contrary rule has been said to apply, namely, that when penalties are provided by statute, the courts 'will not impose additional penalties for noncompliance with the licensing requirement.'"  Id. at 580-81 (quoting

<u>Vitek, Inc. v. Alvarado Ice Palace, Inc.</u>, 110 Cal.Rptr. 86, 91 (Cal. Ct. App. 1973)).  As several courts have explained, "[t]his exception to the general rule appears to rest, at least in part, on an application of the principle *expressio unius exclusius alterius est* (to express one thing is to exclude another)."  <u>Id.</u> at 581.  Along the same lines, the California Supreme Court has stated:

> In some cases, on the other hand, the statute making the conduct illegal, in providing for a fine or administrative discipline excludes by implication the additional penalty involved in holding the illegal contract unenforceable; or effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved.

<u>Lewis & Queen v. N. M. Ball Sons</u>, 308 P.2d 713, 719 (Cal. 1957) (finding, however, that court was not free to weigh whether forfeiture was unduly harsh in case of unlicensed contractor because legislature had expressly provided for forfeiture as a penalty).  Finally, absent a specific provision making a contract unenforceable, several courts have refused to void a contract for failure to comply with statutory requirements where doing so would allow a defendant to retain the fruits of plaintiff's labors with no consideration, thus amounting to a forfeiture.  <u>See, e.g.</u>, <u>Felix v. Zlotoff</u>, 153 Cal. Rptr. 301 (Cal Ct. App. 1979) (refusing to void contract entered into in violation of statute requiring building design contracts to be in writing); <u>Wilson v. Stearns</u>, 267 P.2d 59 (Cal. Ct. App. 1954) (refusing to void contract entered into in violation of statute requiring contract for real estate commissions to contain a termination date).

With regard to the specific licensing statute at issue here, no cases have examined whether an unlicensed commercial lender may enforce a loan obligation.  Examining the text of the California Finance Lenders Law, California Financial Code § 22100 provides: "No person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner."  This provision applies to both consumer and commercial finance lenders.  A consumer finance lender who violates any provision of the California Finance Lenders Law in making a loan forfeits all its interest, and if

the violation is willful, forfeits all the principal.  Cal. Fin. Code § 22752(a) ("If any provision of this division is violated in the making or collection of a loan, for any reason other than a willful act of the licensee, the licensee shall forfeit all interest and charges on the loan and may collect or receive only the principal amount of the loan."); id. § 22750(b) ("If any provision of this division is willfully violated in the making or collection of a loan, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction."). Thus, the penalties for consumer finance lenders include a forfeiture provision for willful violations.[5]  Although these two provisions do not specifically address whether they apply to lending without a license, § 22100 requires a person engaged in the business of finance lending to be licensed, and thus, an unlicensed lender who loans money violates this provision.

Unlike the statutory penalties for consumer finance lenders, the statutory penalties for commercial finance lenders do not contain any forfeiture provisions.  Cal. Fin. Code § 22780 ("Any person who willfully violates any provision of this division, or who willfully violates any rule or order adopted pursuant to this division, shall, upon conviction, be punished by a fine of not more than ten thousand dollars ($10,000), by imprisonment in a county jail for not more than one year or in the state prison, or by both that fine and imprisonment. However, no person may be imprisoned for the violation of any rule or order unless he or she had knowledge of the rule or order."). As above, this section does not specify whether it applies to unlicensed commercial lending, but § 22100 requires a person engaged in the business of finance lending to be licensed, and thus, an unlicensed commercial lender violates this provision in lending money.

Because the legislature expressly provided for forfeiture as one of the penalties applicable to consumer lenders, the absence of any forfeiture penalty applicable to

---

[5] The Court notes that Plaintiffs have not alleged that Defendants' unlicensed status was willful at any time.

commercial lenders indicates an intent that forfeiture only be available with regard to consumer lenders.  See, e.g., Wilson, 267 P.2d at 65 (legislature's decision to not provide for forfeiture of all real estate commission contracts entered into in violation of statute indicated intent not to require forfeiture of all contracts, as legislature specifically provided for forfeiture in provisions governing real estate subdivision sales); see also Lewis & Queen, 308 P.2d at 713, 719 ("In some cases . . . the statute making the conduct illegal, in providing for a fine or administrative discipline excludes by implication the additional penalty involved in holding the illegal contract unenforceable[.] . . .  But we are not free to weigh these considerations" where legislature expressly provided that unlicensed contractors could not collect on a construction contract.).  Along the same lines, the present California Finance Lenders Law contains penalties similar to those at issue in Wood for unlicensed lending, a civil fine and conviction for a misdemeanor, and in that case the court declined to void a loan agreement in the absence of an express provision providing for loan avoidance.  See Wood, 143 P. at 693.  For these reasons, the statutory language here counsels against voiding the agreements.

Similarly, under the analysis set forth in R.M. Sherman Co., "when penalties are provided by statute, the courts 'will not impose additional penalties for noncompliance with the licensing requirement.'"  236 Cal. Rptr. at 580-81 (citation omitted).  Thus, the fact that the legislature specifically made commercial lenders subject to monetary fines and conviction for a misdemeanor for violations of the California Finance Lenders Law, but did not provide for forfeiture or voiding of contracts, counsels against imposing such an additional penalty.  Finally, equitable considerations weigh heavily against allowing Plaintiffs to void the agreements and keep the money advanced by Defendants, as such a result would provide Plaintiffs with a windfall and amount to a forfeiture by Defendants.  See, e.g., Felix, 153 Cal. Rptr. 301; Wilson, 267 P.2d 59.  In sum, absent a specific statute allowing for forfeiture or avoidance of loans made by unlicensed lenders, the Court will not impose such a penalty here.  Finally, the Court notes that,

had Secured Assets of California been licensed when it provided the loans, Plaintiffs would have no potential claims for usury, as licensed lenders are exempt from the Usury Law.

### 3.    Usury

Plaintiffs contend that the agreements are void because they contain usurious interest provisions.   As Plaintiffs acknowledge later in their memorandum, an agreement containing a usurious interest rate only renders the interest provisions of a note void. Epstein v. Frank, 177 Cal. Rptr. 831, 837 (Cal. Ct. App. 1981).  Voiding of the interest provisions "do[es] not affect the right of the payee to recover the principal amount of the note when due.  The inclusion of a usurious interest provision, therefore, results, in effect, in a note payable at maturity without interest." Id.  Accordingly, Plaintiffs argument fails as a matter of law.

In sum, SAIF, Inc. is entitled to summary judgment on the question of whether Plaintiffs have breached the agreements as to unpaid principal, as Plaintiffs do not contend that they have repaid the loans, and their arguments as to why the agreements are unenforceable fail as a matter of law.  At this time, however, as indicated above with regard to Plaintiffs' accounting claim, the Court has insufficient information regarding the amounts Plaintiffs continue to owe.  Further, SAIF, Inc. has not sought summary judgment as to interest, costs, and fees.  Accordingly, the Court GRANTS in part and DENIES in part SAIF, Inc.'s motion for summary judgment on its breach of contract claims, Counts I-X of its counterclaim.

## D.    Order of Proof

Where the issues underlying equitable and legal claims are distinct, the trial court has broad discretion to regulate the order of trial.  Granite State Ins. Co. v. Smart Modular Techs., Inc., 76 F.3d 1023, 1027 (9th Cir. 1996).  Similarly, trial courts have broad discretion to regulate the order of proof at trial.  See, e.g., Huddleston v. U.S., 485 U.S. 681, 690 (1988); see also Fed. R. Evid. 611.  Accordingly, in its discretion, the Court will conduct the accounting hearing before trying remaining legal issues.

1

**<u>Conclusion</u>**

2  **A.    Plaintiffs' Motion for Summary Judgement**

3        For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part

4  Plaintiffs' Motion for Summary Judgment. (Doc. No. 86.)  The Court grants Plaintiffs'

5  motion for summary judgment as to their right to an accounting, but denies the

6  remainder of Plaintiffs' motion.

7  **B.    Defendants' Motion for Summary Judgment**

8        For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part

9  Defendants' motion for summary judgment. (Doc. No. 87.)  Accordingly:

10        1.    The Court GRANTS in part and DENIES in part Defendants' motion for

11  partial summary judgment as to Plaintiffs' affirmative claims to recover usurious

12  payments, set forth in Count III of the TAC.  Plaintiffs' affirmative claims to recover

13  usurious interest payments are barred for any payments before June 30, 2002.

14  Similarly, to the extent Plaintiffs seek treble damages, those claims are barred for any

15  payments made before June 30, 2003.  Any usurious payments are not time barred,

16  however, from use in reduction of the principal debt.

17        2.    The Court GRANTS Defendants' motion for summary judgment on

18  Plaintiffs' breach of contract claims, contained in Count IV of the TAC.

19        3.    The Court GRANTS Defendants' motion for summary judgment on

20  Plaintiffs' fraud claims, contained in Count V of the TAC.

21        4.    The Court GRANTS Defendants' motion for summary judgment on

22  Plaintiffs' unfair business practices claims, contained in Count VI of the TAC.

23        5.    The Court GRANTS Defendants' motion for summary judgment on

24  Plaintiff Mousavinia's claim for interference with prospective economic advantage

25  claim, set forth in Count VII of the TAC.

26        6.    The Court GRANTS Defendants' motion for partial summary judgment

27  on Plaintiffs' RICO claims, contained in Count IX of the TAC.  Plaintiffs' claims based

28  on usurious interest payments are barred for any payments before June 30, 2002.

7.      The Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' claims for slander, contained in Count X of the TAC.

8.      The Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' claims for conversion, contained in Count XI of the TAC.

9.      The Court GRANTS Defendants' motion for summary judgment as to any claims brought by LTM Auto Sales, Inc.  The Court DISMISSES Plaintiff LTM Auto Sales, Inc.

10.      The Court GRANTS Defendants' motion for summary judgment  as to all claims against Defendant Carole Sterling.  The Court DISMISSES Defendant Carole Sterling from this action.

**C.      SAIF, Inc.'s Motion for Summary Judgment**

As discussed above, the Court **GRANTS** in part and **DENIES** in part SAIF, Inc.'s motion for summary judgment on its breach of contract claims.  (Doc. No. 87.)  Accordingly, Plaintiffs have breached the agreements as to unpaid principal.

**D.      Order of Proof and Scheduling**

The Court will conduct the accounting hearing on **November 21, 2006 at 9:00 a.m**.  The Court will discuss further scheduling at the pretrial conference, scheduled for **November 6, 2006 at 10:30 a.m.**  Finally, the parties shall file their memoranda of contentions of fact and law on or before **October 23, 2006**.

IT IS SO ORDERED.

DATED:  October 16, 2006

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

1    COPIES TO:
     Richard S. Van Dyke, Esq.
2    Van Dyke & Associates
     Faraday Business Park
3    5741 Palmer Way, Suite B
     Carlsbad, CA 92008
4

5    Richard P. Miller, Esq.
     Law Offices of Richard P. Miller
6    2207 Garnet Avenue, Suite N
     San Diego, CA 92109

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28